UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

------------------------------X

In Re: : Case No. 06-12961-JKF
MICHAEL RALPH REAGOSO :
a/k/a MICHAEL R. REAGOSO : Chapter 7
a/k/a M. R. REAGOSO :
    Debtor :
CAROL LYMAN REAGOSO :
a/k/a CAROL REAGOSO :
a/k/a CAROL L. REAGOSO :
    Joint Debtor :
  :
  :
MICHAEL H. KALINER, TRUSTEE : Adv. No. 07-47
    Plaintiff :
  :
v. :
  :
MORTGAGE ELECTRONIC :
REGISTRATION SYSTEMS, INC. :
and :
LITTON LOAN SERVICE, LP :
a/k/a LITTON LOAN SERVICING, INC. :
and :
HOMEOWNERS LOAN CORP. :
    Defendants. :

------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AND LITTON LOAN SERVICING, INC.'S MOTION TO DISMISS THE
COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6) OF
<u>THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

#2878272 (148352.026)

Defendants Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for J.P. Morgan Chase Bank, Trustee and Litton Loan Servicing, Inc.[1] (improperly designated in the Complaint as "Litton Loan Service, LP") ("Litton"), respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint of Plaintiffs Michael Ralph Reagoso and Carol Lyman Reagoso (the "Reagosos" or "debtors") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

I. **PRELIMINARY STATEMENT**

This is another case where borrowers use the Bankruptcy Court to attempt to collaterally attack a final judgment in mortgage foreclosure after they have had a full and complete opportunity to contest the validity of a mortgage loan in a state court. Such a strategy merely increases the cost for both the lender and a Chapter 7 estate which lacks the resources to waste money on a claim which is deficient as a matter of law.[2] Rather than acknowledge the fact that judgment in mortgage foreclosure has been entered after summary judgment and a motion for reconsideration denied[3], the debtors merely allege that they are defendants in a mortgage

---

[1] MERS is a national clearinghouse for mortgage loans, created by the Federal National Mortgage Assoc., the Federal Home Loan Mortgage Corp., the Government National Mortgage Association and the Mortgage Bankers Assoc. of America, among others. The intent in the creation of MERS was to enable the free assignability of mortgages, by eliminating the need to prepare and record paper assignments something which is extremely important in this age of securitized mortgage obligations. See, e.g, MERSCORP v. Romaine, 8 N.Y. 3d 90, 828 N.Y.S.2d 266 (2006). Under the contract between MERS and its members, MERS serves the mortgagee of record in an administrative capacity, with no rights to the payments but retaining the right to act as plaintiff in a foreclosure action at the request of the member which is the beneficial owner of the loan. See, In re Sina, 2006 WL 2729544 (Minn.App. 2006) (at *2); Mortgage Electronic Registration Systems, Inc. v. Nebraska Dept. of Banking, 270 Neb. 529, 704 N.W. 2d 784, 786-87 (2005). While MERS is the record holder of the mortgage in question, JP Morgan Chase is the beneficial and equitable owner of the loan and MERS is merely the nominee for JP Morgan Chase. However, the ownership status of the loan is not essential to the Court's determination of the myriad deficiencies of this Complaint, as discussed above.

[2] Defendants question the disclosure made to the Trustee and this Court in the Motion to Approve Engagement of Counsel to pursue this suit. It does not appear that there has been any disclosure that a final judgment in mortgage foreclosure had been entered against the debtors in April, 2006. Moreover, in a Chapter 7 case, it is improper for the debtors to assure payment of fees as the assets of the estate should go first to pay existing creditors.

[3] The state court mortgage foreclosure docket, of which this Court may take judicial notice, is attached hereto as Exhibit "A".

#2878272 (148352.026)

2

foreclosure action. See, Complaint, ¶20. This Court may well have looked at the matter differently when it approved counsel to be paid from assets of the estate had it been informed that a final non-appealable judgment in mortgage foreclosure had been entered almost a year earlier. The well-settled effect of that judgment is to foreclose any attack on the formation, validity or extent of the mortgage lien on the debtors' property. Nonetheless, the Reagosos have now attempted to claim in this action that they were fraudulently induced to enter into a loan transaction based on terms initially offered at a favorable rate, but which later were switched to less favorable terms. See, Complaint (Exhibit "B" hereto at ¶¶8-12). Clearly, the Reagosos had the opportunity to raise these defenses to the formation of the loan in the foreclosure action yet judgment was entered against them. Now, they seek a "second bite at the apple." As discussed below, this attempt to collaterally attack a final non-appealable judgment of a state court is barred by the Rooker-Feldman doctrine and by the doctrine of res judicata. Thus, to the extent that the Complaint seeks to have this Court "modify" the terms of the loan or otherwise seek damages for some kind of "fraudulent inducement," the claims are barred and may not be raised in a subsequent federal court action.

The remaining affirmative claims are for alleged violations of the Truth-in-Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA") and related state court claims under theories of alleged violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and common law fraud. As with the rescission claims, these claims not only seek to overturn the crucial state court findings that the formation of the mortgage was legitimate and not fraudulently induced, but also completely ignore the fact that MERS is a mere **assignee** of the mortgage and is not subject to any claims which the debtors may have had against the originating lender unless the defects in the TILA disclosures were apparent on the face of the

#2878272 (148352.026)

loan documents or unless this loan was subject to HOEPA in that it was a high fee loan as that term is defined in HOEPA. As discussed below, not only is the Complaint wholly conclusory as to any defects in the TILA disclosures (see Complaint, ¶26[4]), the loan documentation attached to the Complaint demonstrates on its face that this is not a HOEPA loan. Indeed, these debtors, who live in a house valued at over $400,000.00 (actually $500,000 if one believes their now – expired listing agreement) do not come remotely close to the threshold of 8% fees and pre-paid interest such that the loan would qualify for the added protections under HOEPA. Accordingly, it is incumbent upon the debtors to identify the alleged misstatements or non-disclosures which would have been apparent to an assignee on the fact of the loan documents. Not only have the debtors <u>not</u> attempted to do this, they <u>cannot</u> do this. An assignee has no duty of inquiry and is entitled to rely on the loan documents and TILA disclosures to determine whether a loan which is being assigned to it passes muster under TILA. There is no allegation that there is anything on the face of these loan documents which is deficient such that it would have been apparent to an assignee such as MERS' principal, JP Morgan Chase. Moreover, any affirmative claims under TILA and RESPA are long since time barred and cannot be raised four years after the closing of the loan.

A final note should be made about the utterly conclusory allegations of fraud set forth in the Complaint. Fraud is a serious charge and is something recognized to be serious under the Federal Rules of Civil Procedure which requires particularity in any claim of fraud or misrepresentation. <u>See</u>, Fed.R.Civ.P. 9(b). Obviously, since MERS was not the originating lender on the loan, the fraud claims cannot be directed as against it (or its servicer, Litton).

---

[4] Not surprisingly, although there is a conclusory allegation of defects in the disclosures in paragraph 26 of the Complaint in the TILA count, there is absolutely no mention of any defect in the disclosures in the factual section of

#2878272 (148352.026)

4

Accordingly, the debtors attempt to "boot strap" the fraud claims against the originating lender to MERS by this wholly conclusory allegation:

> 15. The plaintiffs believe and therefore aver that the practices of defendant Homeowner's Loan Corp. described above, which sometimes are referred to as "bait and switch" tactics, are familiar to the assignee defendants and, in particular, represent a practice which the assignee support by their business relationship with defendant Homeowners Loan Corp., in that (a) purchase of mortgage loans by defendant Litton and MERS provided ongoing source of lending capital to defendant Homeowners Loan Corp. and (b) the defendants collectively benefit from receiving loan origination fees and interest payments predicated upon terms other than those which are initially offered to borrowers in order to induce acceptance of loan.

This is simply not a proper "information and belief" allegation as there is no information provided nor is there any source of counsel's belief. This is a pleading subject to Rule 9011 and Fed. R.Civ.P. 11 requiring the signing counsel to have a reasoned basis for his allegations. Here, the allegations are ridiculous on their face. As noted above, MERS is a mere nominee for J.P. Morgan Chase, which is a Trustee for a securitized mortgage portfolio. Litton is a mere servicer. Congressional intent in limiting assignee liability was to facilitate the free transfer and securitization of mortgage loans such as this. It is outrageous, to put it mildly, to allege without any factual basis that the assignee of a loan (which debtors incorrectly designate, although they are already subject of a mortgage foreclosure judgment in favor of that entity) somehow had knowledge of "bait and switch" practices which should be imputed to the assignees. Indeed, this loan is one of many in a securitized package sold to investors. Neither MERS nor Litton have any alleged role in the lending practices of Homeowners Loan Corp. that could subject them to

---

the Complaint. There simply is nothing on the face of the document which would put an assignee on notice of a potential claim.
#2878272 (148352.026)

5

liability. Not only are the allegations of fraud and consumer protection violations wholly conclusory - - they are contrary to law as it pertains to assignees.

Therefore, for all of the reasons set forth in detail below, this Complaint should swiftly be dismissed with prejudice.

## II. STANDARDS FOR THIS MOTION

MERS and Litton have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can take two forms: it can attack a complaint on its face, known as a "facial attack," or it can attack the substance of the allegations of subject matter jurisdiction, commonly referred to as a "factual attack." See, Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884, 891 (3d Cir. 1977); Krumins v. Atkinson, 1996 W.L. 432, 477 (E.D. Pa. 1996) (at *1); Young v. Francis, 820 F.Supp. 940, 943 (E.D. Pa. 1993). As held by the Third Circuit in Mortensen:

> [B]ecause at issue in a factual 12(b)(1) motion is the Trial Court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Id. at 891 (emphasis added). Accord, Young v. Francis, supra, 820 F. Supp. at 943.

On a motion to dismiss a complaint for failure to state a claim for relief pursuant to Fed. R. C. P. 12(b)(6), all well-pleaded facts in the Complaint are deemed to be true. McNamara v. County Council of Sussex County, 738 F. Supp. 134, 137 (D. Del.), aff'd, 922 F.2d 832 (3d Cir. 1990); Bethlehem Plaza v. Campbell, 403 F. Supp. 966, 967 (E.D. Pa. 1975). However,

#2878272 (148352.026)

unsupported conclusions without a factual basis and sweeping conclusions of law cannot be utilized by a plaintiff to defeat a motion to dismiss. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991), cert. denied, 112 S.Ct. 1475 (1992); Randolph County Federal Savings & Loan Assn. v. Sutliffe, 775 F. Supp. 1113, 1115-16 (S.D. Ohio 1991). In order to avoid dismissal, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), cert. denied, 470 U.S. 1054 (1985); In re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981) cert. dismissed, 462 U.S. 1125 (1983). As stated by the Sixth Circuit:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

In the consideration of a motion to dismiss pursuant to Rule 12(b)(6), the court must limit itself to facts stated in the Complaint, in documents attached to the Complaint, and matters of which judicial notice may be taken under Fed. R. Evid. 201. Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986); Commonwealth of Pennsylvania v. Brown, 373 F.2d 771, 778 (3d Cir. 1967). Judicial notice may be taken of matters of public record without converting a motion to dismiss to a summary judgment motion. 5A Wright & Miller, Federal Practice and Procedure. §1364 at p. 479 (1990); Kramer v. Time Warner, Inc., supra. 937 F. 2d at 773 (3d Cir. 1991); DiNicola v. DiPaolo, 945 F. Supp. 848, 855 n.2 (W.D. Pa. 1996). Where facts alleged to be true in the

#2878272 (148352.026)

7

Complaint are contradicted by facts that can be judicially noticed, those facts (in the Complaint) will not be deemed to be true for the purposes of a Rule 12(b)(6) motion. 5A Wright & Miller, Federal Practice and Procedure, §1363 at p. 464 and n. 38 (1990) (and cases cited therein).

Under these applicable standards, it is clear that the Complaint against MERS and Litton should be dismissed. The existence of a mortgage foreclosure judgment in state court and the utter absence of any allegations of wrongdoing by MERS and Litton are fatal to the Debtor's claims, both on jurisdictional and substantive grounds.

## III. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER MODIFICATION AND FRAUD IN THE INDUCEMENT CLAIMS UNDER THE ROOKER-FELDMAN DOCTRINE

As discussed above, the gravamen of the Complaint, from what can be deduced from its conclusory allegations is that the loan was issued after a "bait and switch" maneuver by the originating lender.

One thing is clear from these allegations - - to the extent there is any merit to them, they would have constituted defenses to MERS' claims in the mortgage foreclosure action. The objection to a "bait and switch" maneuver is a "fraud in the inducement" defense and would have constituted an <u>absolute</u> defense in a mortgage foreclosure action had it been asserted and had it been meritorious. See, e.g., Cumingham v. McWilliams, 714 A.2d 1054, 1057 (Pa. Super 1988) (fraud in the inducement of the mortgage is cognizable as a defense in a foreclosure action under Pennsylvania law).

Nonetheless, MERS' principal, JP Morgan Chase, has obtained a judgment in mortgage foreclosure in the Chester County Court of Common Pleas against the plaintiffs on April 7, 2006. A subsequent motion for reconsideration (prosecuted by the same counsel as is counsel of record

#2878272 (148352.026)

8

for the debtors in this adversary action) was denied a month later. See, Exhibit "A" hereto.[5] Now, the Debtors are attempting to assert these same allegations by way of collateral attack on the mortgage foreclosure action in a subsequent bankruptcy court suit. The Rooker-Feldman doctrine prevents "inferior federal courts from sitting as appellate courts for state court judgments." In re Kanapper, 407 F.3d, 573, 580 (3rd Cir. 2005); Port Authority Police Beneval & Association, Inc. v. Port Authority of New York and Jew Jersey Police Department, 973 F.2d, 169, 173 (3rd Cir. 1992). The Rooker-Feldman doctrine arises from 28 U.S.C. §1257 which states in relevant part that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had may be reviewed by the Supreme Court." Since Congress does not confer similar review powers to the United States District Court, the Supreme Court in two cases, Rooker v. Fidelity Trust Company, 263 U.S. 413 (1923) and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983) held that Congress did not intend to empower a district court to review state court decisions. See, Kanapper, supra at 580. Thus, the Rooker-Feldman doctrine prohibits district courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or avoiding the state court's ruling. Id.

Thus, a claim is barred under the Rooker-Feldman doctrine in two circumstances: (1) if the federal claim was actually litigated in state court prior to the filing of the federal action or, (2), if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon the conviction that the state action was wrong. Id. In either case, Rooker-Feldman, bars a litigant's federal claims and divests the district court of subject matter jurisdiction over those claims. Id., citing, Exxon Mobil v. Saudi Basic Industrial

---

[5] As this court may take judicial notice of the foreclosure proceedings in state court (as the Debtor acknowledges in his complaint) Rule 10(c) of the Federal Rules of Civil Procedure permits defendants to attach that document to this

#2878272 (148352.026)

9

Corp., 125 S.Ct.1517, 1521-22 (2005). Also see, Walker v. Horn, 385 F.3d. 321, 329 (3rd Cir. 2004). A federal claim is deemed to be inextricably intertwined" with an issue adjudicated by a state court when (1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief or, (2) the federal court must take an action that would negate the state court's judgment. In other words, Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders. Walker, supra, 385 F.3d at 330; Kanapper, supra, 407 F.3d at 581.

Here, as noted above, the allegations asserted against MERS and Litton in this case relate inextricably to the making of the mortgage and the enforceability of the mortgage, as well as defenses which the debtor might have in an action to enforce the mortgage or mortgage loan based on alleged fraudulent inducement. A finding by this Court on that issue would necessarily require a determination that the entry of judgment in mortgage foreclosure by the Chester County Court of Common Pleas was wrong. Thus, in similar cases, courts in the Third Circuit and elsewhere have repeatedly held that lender liability claims such as those presented here may not be asserted in a federal forum after a judgment in mortgage foreclosure has been entered. See, e.g., Smith v. Litton Loan Servicing, LP, 2005 W.L. 289927 (E.D.Pa. 2005) (at *7); in re Schlupp, 2005 W.L. 2483209 (Bankr. E.D.Pa. 2005) (at *5); Piotroski v. Federman & Phelan, LLP., 2005 W.L. 3118031 (M.D. Pa. 2005) (at *3); in re Holler, 342 B.R. 212, 221 (Bankr. W.D.Pa. 2006). Also see, Byrd v. Homecomings Financial Network, 407 F.Supp. 2d. 937, 943-44 (N.D. Ill. 2005) (Rooker-Feldman doctrine bars mortgagor's FDCPA, RESPA and TILA claims which in effect sought to collaterally attack a state court judgment of foreclosure). In

---

motion without converting the motion to one for summary judgment under Rule 56.

#2878272 (148352.026)

Spencer v. Mortgage Acceptance Corp., 2006 W.L. 1302413 (N.D.Ill. 2006) the district court **specifically** held that a mortgage foreclosure judgment bars claims asserted under various federal statutes where those claims are based on her application for a mortgage, the conduct of the parties during the mortgage application process, and her entry into a mortgage agreement. Id. at *4. Similarly, in McMahon v. Washington State Bank, 2005 W.L. 1648204 (W.D. Wis. 2005) the district court held that an action to rescind a mortgage based on alleged TILA violations cannot be considered after entry of a state court foreclosure judgment under the Rooker-Feldman doctrine. Id. at *2, citing, Crutchfield v. Countrywide Home Loans, 389 F.3d. 1144 (10th Cir. 2004); Thomson v. Ameriquest Mortgage Company, 2003 W.L. 22012207 (N.D. Ill. 2003) and Mercado v. Playa Realty Corp., 2005 W.L. 1594306 (E.D.NY. 2005).

Five Bankruptcy Judges in this District have now held that the Rooker-Feldman doctrine is a bar to TILA or state law rescission claims after entry of a state court foreclosure judgment, as in this case. See, in re Stuart, 2007 WL 1032261 (Bankr. E.D.Pa. 2007) (at *5) (Frank, B.J.) ("[t]he Bankruptcy Court lacks jurisdiction to consider a claim to enforce TILA rescission rights if a judgment in foreclosure has been entered prior to exercising rescission rights under TILA."); in re Cooley, 2007 WL 781952 (Bankr. E.D.Pa.2007) (at *7), (Fitzsimon, B.J.); in re Faust, 353 B.R. 94, 100 (Bankr. E.D.Pa. 2006) (Raslavich, B.J.); In re Madera, 2007 WL 521323 (Bankr. E.D.Pa. 2007) (at *4) (Sigmund, C.J.) (rescission claims are barred by Rooker-Feldman Doctrine after entry of judgment in foreclosure); Randall v. Bank One, 2006 W.L. 3833919 (Bankr. E.D.Pa. 2006) ( at *7) (Fox, B.J.). Also see, Ayres-Fountain v. Eastern Sav. Bank, 153 Fed. Appx. 91, 93 (3d Cir. 2005) (cited in Madera, supra at *5).

Plaintiff's claims in this action, to the extent they seek judicial modification of the mortgage, are attempts to overturn a state court mortgage foreclosure action by raising claims

#2878272 (148352.026)

11

which could have and should have been resolved in the state court and which go precisely to the validity of the lien foreclosed. Similarly, any claims for damages based on alleged fraudulent inducement are similarly barred. The prohibition of the assertion of such claims in federal court is the issue at the heart of the Rooker-Feldman doctrine. Any determination of these issues against MERS and Litton by the federal court would necessarily have the effect of a determination that the entry of judgment in foreclosure was incorrect because there are defenses to the mortgage obligation. Accordingly, the modification and fraudulent inducement claims against MERS and Litton are absolutely barred by the Rooker-Feldman doctrine.

## IV.    THIS ACTION IS ALSO BARRED BY THE DOCTRINE OF RES JUDICATA

Under applicable Pennsylvania law, a judgment, whether on the merits or by default, is res judicata with respect to transactions that occurred prior to the entry of judgment. McGill v. Southwark Realty Company, 573 Pa. 704, 827 A.2d 430, 435 (Pa.Cmwlth. 2003). Also see, Smith v. Litton Loan Servicing, LP, supra, 2005 W.L. 289927 (at *5). The actions complained of in the complaint occurred prior to the entry of judgment against the Andrews. Res judicata bars parties from re-litigating issues that were decided in a prior lawsuit, as well as any issues that could have been raised in the previous lawsuit. Federated Department Stores v. Moitie, 452 U.S. 394, 398 (1981); Byrd v. Homecoming Financial Network, supra, 407 F.Supp. 2d at 944.

It is clear that the fraudulent inducement and judicial modification claims that have been raised against MERS and Litton in this action could have been raised as defenses in the foreclosure action. Under the Full Faith and Credit Act, U.S.C. §1738 federal courts must give state court judgments the same preclusive effect that they would have had in state court. Byrd v. Homecomings Financial Network, supra at 944. In the foreclosure action, there has been a final

#2878272 (148352.026)

judgment rendered on the merits as to the validity and extent of the mortgage lien and indebtedness there is an identity of parties and an identity of causes of action which were or could have been raised. Accordingly, this action against MERS is barred by the existence of a state court judgment in foreclosure in MERS' favor.

## V. THIS IS NOT A HOEPA LOAN AND NEITHER MERS NOR LITTON IS LIABLE FOR ANY CLAIMS OTHER THAN FOR ERRORS OR NON-DISCLOSURES APPARENT ON THE FACE OF THE TILA DISCLOSURE DOCUMENTS

In conclusory fashion, the Reagosos allege in Count I of the Complaint an affirmative cause of action for damages purportedly arising under TILA and HOEPA. Amazingly, there is not a single allegation in the Complaint which even purports to allege facts necessary to support a claim that this is a HOEPA loan or any other basis why mere assignees should be liable for an undisclosed alleged "bait and switch" scheme of a lender who made the loan a year prior to the assignment. Under the Truth-in-Lending Act, a civil action for a TILA violation may be brought against an assignee of the violating creditor "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." 15 U.S.C. §1642(a). Thus, as held by the Third Circuit:

> [o]ur sister circuits have uniformly held that "apparent on the face" means exactly that – for an assignee to be liable under TILA, the violation must be apparent on the face of the assignment disclosure documents. We agree. In Taylor [Taylor v. Quality Hyundi, Inc., 150 F.3d 689 (7th Cir. 1998)], for example, Plaintiff asserted that the violation was "apparent on the face" because the lender, given

#2878272 (148352.026)

> its experience in the field, must have known that a violation had occurred ... the Taylor Court rejected that argument because "the rule for which the Plaintiffs are arguing would impose a duty of inquiry on financial institutions that serve as assignees." The Taylor Court correctly held that Section 1642(a) creates no such duty and that "only violations that a reasonable person can spot on the face of the disclosure statement or other assigned documents will make the assignee liable under the TILA."

Ramadan v. Chase Manhattan Corp., 229 F.3d 194, 198-99 (3rd Cir. 2000).

Since Ramadan, both district courts and bankruptcy courts in this district have routinely held that assignee financial institutions have no duty to inquire or refer to evidence or documents extraneous to the disclosure documents to determine whether they might be some defect in the underlying transaction. See, e.g., McMaster v. CIT Group, 2006 WL 1314379 (E.D.Pa. 2006) (at *5) (assignee lender has no duty to go beyond loan documents and ask questions of borrower as to reasonableness of fees charged); McNinch v. Mortgage America, Inc., 250 B.R. 848, 860-61 (Bankr. E.D.Pa. 2000) (assignee's duty is simply to insure that the loan had a matching accurate TILA statement paired with it and nothing more); also see, Jordan v. Chrysler Credit Corp., 73 F.Supp. 2d 469, 473 (D.N.J. 1999) "[t]he court must determine whether the alleged violation – that the RIC falsely stated the amount paid to a third party – as apparent on the face of the disclosure statement submitted to the assignee, Chrysler. If it is not "apparent on the face" of the disclosure statement, **the court's analysis ends and it must find that the plaintiff has failed to state a claim against Chrysler."**); Kane v. Equity One, Inc., 2003 W.L. 22939377 (E.D.Pa. 2003) (at *4) ("plaintiffs allegations failed to state a claim of assignee liability under TILA for two reasons. First, TILA's assignee liability provision expressly limits liability to violations apparent on the face of the assigned documents. Plaintiff fails to allege any violations apparent on the face of the assigned loan documents. Plaintiffs contention that Sovereign should have

#2878272 (148352.026)

Case 07-00047-jkf   Doc 10-1   Filed 04/19/07   Entered 04/19/07 15:07:02   Desc
Memorandum of Law   Page 15 of 19

been alerted to a potential violation due to the inclusion of a gas bill charge that was allegedly duplicative of a charge in Plaintiff's son's loan transaction does not constitute an allegation of a facially apparent violation. . . . TILA's assignee liability provisions do not impose any duty of additional inquiry on assignees.").

Under this well settled body of law, a TILA claim against an assignee such as the one in this case may only proceed past a motion to dismiss if the Plaintiff can allege violations apparent on the face of the TILA disclosures and other assigned documents. The Reagosos make no effort to do so, alleging instead (in wholly conclusory fashion) that the practices of Defendant Homeowners Loan Corp. described above, which sometimes are referred to as "bait and switch" tactics, are familiar to the assignee defendants . . ." Complaint, ¶15. This kind of allegation is insufficient as a matter of law to constitute a claim against assignee lenders such as Litton and MERS. They have no duty of additional inquiry to ascertain whether the lending practices of the originating lender are such that they constitute TILA violations. Indeed, the Reagosos may well have claims against Homeowners Loan Corp. However, those claims do not extend under TILA or state law statutes against MERS or Litton.

In what appears to be a desperate attempt to salvage what otherwise are facially invalid claims, the Reagosos once again allege in conclusory fashion in Count I that the instant loan qualifies under HOEPA. Complaint, ¶25. Indeed, there is not a single factual allegation that supports the conclusory legal conclusion that "applicability of the Federal Truth-in-Lending Act, as amended by the Home Ownership and Equity Protection Act of 1994 . . . is conferred in the instant matter by Section 1602(aa) thereof. Complaint, ¶25. However, HOEPA applies to a consumer credit transaction secured by the consumer's principal dwelling only if (a) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage

#2878272 (148352.026)

15

points the yield on treasury securities have incomparable periods of maturity on the 15th day of the month immediately proceeding the month in which the application for the extension of credit is received by the creditor; or (b) the total points and fees payable by the consumer at or before closing will exceed the greater of (i) 8% of the total loan amount; or (2) $400.00. Kane v. Equity One, Inc., supra at *3, citing 15 U.S.C. §1602(aa).

According to the allegations of the Complaint, the interest rate was 7.250% with an actual APR of 8.909% (Complaint, ¶10) which cannot exceed by more than ten points the yield on treasury securities (as it is less than 10%) and (2) the loan origination fees on a $350,000 loan were $9,500 (Complaint, ¶¶10(b) and (c)) and nothing on the settlement sheet which is attached to the Complaint even remotely suggests that fees exceeded $30,000, which they would have to do in order to reach the 8% threshold. Accordingly, this is not an HOEPA loan as a matter of law and assignees are absolutely insulted from claims such as those made in the instant Complaint unless, as noted above, then defects are apparent on the face of the disclosure documents. Since they are not, the TILA and HOEPA claims fail as a matter of law.

## VI. THE AFFIRMATIVE CLAIMS ARE BARRED BY THE APPLICABLE STATUTES OF LIMITATION

TILA claims and HOEPA claims are both governed by the one (1) year limitations period found in 15 U.S.C. §1640(e). See, with respect to TILA, 15 U.S.C. §1640(a) and with respect to HOEPA, 15 U.S.C. §1639. Also see Smith v. EquipCredit Corp., 202 W.L. 32349873 (E.D.Pa. 2002) (at *3). The damages claims in this case all arise out of the origination of the loan, which was more than three years prior to the institution of this action. Accordingly, to the extent that any claim exists on its merits under TILA or HOPEA, they are barred by the applicable statutes of limitation.

#2878272 (148352.026)

VII. **THE RESPA CLAIMS ARE WHOLLY FRIVOLOUS**

Count II of the Complaint purports to state a claim under the Federal Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. However, there is not a single factual allegation supporting the claim and the claim merely states, in wholly conclusory form, that:

> 29. The Defendants were required to comply with the provisions of the Federal Estate Settlement Procedures Act of 1974, as amended; 12 U.S.C. §§2601 et seq. in accordance with §2602 thereof. 12 U.S.C. §2602.
>
> 30. The Defendants did not comply with the applicable provisions of RESPA, particularly including the disclosures required pursuant to 12 U.S.C. §2604.

The "disclosures" of §2604 of the RESPA statute deal with informational booklets to be given by originating lenders to borrowers. The **only** disclosures in RESPA which pertain to assignees or servicers are described in 12 U.S.C. §2605, which is not implicated in the claim. Bare bones RESPA claims such as the one set forth in Count II have been held to violate Rule 8(a)'s requirement of a short and plain statement of the claim. See, e.g., Booker v. Washington Mutual Bank, F.A., 375 F.Supp. 2d 439, 441-42 (M.D.N.C. 2005). Moreover, as an assignee and servicer, (in this case of Litton) these Defendants are not liable as a matter of law under RESPA for alleged RESPA violations which occurred at the time of closing. See, e.g., Jenkins v. Mercatile Mortgage Company, 231 F.Supp. 2d 737, 749 (N.D. Ill. 2002). (Under federal regulations, "lender" means the secured creditor or creditors named in the debt obligation and the document creating the lien. The only exception is in a "table funding transaction," where the loan is immediately assigned from the originating lender at closing to an assignee, the lender is the person to whom the obligation is initially assigned at or after settlement."), citing 24 C.F.R. §3500.2(b).

#2878272 (148352.026)

Here, it is alleged that the assignment to MERS (in actuality, JP Morgan Chase Bank, Trustee) occurred eleven months <u>after</u> the origination of the loan. See, Complaint, ¶¶12-13. Accordingly, these parties are not liable for origination based RESPA violations as a matter of law. Even if they were, the relevant statute of limitations is one year (12 U.S.C. §2614) and any RESPA claims would long since be time barred. Accordingly, Count II for alleged RESPA violations must also be dismissed.[6]

### VIII. NO CLAIMS ARE MADE UNDER STATE LAW AGAINST MERS OR LITTON

While this Court should not even entertain the state law claims on the absence of any basis of federal court jurisdiction, it should be noted that if the court does decide to look at these claims, **not a single allegation involves an action by MERS or Litton.** As noted above, MERS is merely a clearinghouse utilized by major mortgage lenders and holders of mortgage loans to permit the free transfer of mortgages in the marketplace without the necessity of paper, assignments and records. This saves money for everyone. See, footnote 1, <u>supra</u>. MERS is not alleged to have had any contact with the debtors other than to institute a mortgage foreclosure action. Litton is a mere servicer. There are no allegations regarding the servicing of this loan. Moreover, MERS is merely a nominee for JP Morgan Chase and JP Morgan Chase is merely an assignee of the loan. There is no allegation that JP Morgan Chase had any role in the alleged "bait and switch" tatcis or is anything other than a holder in due course. As holders in due course, neither JP Morgan Chase nor MERS is liable for any of the actions allegedly committed by the mortgage broker, the seller or the original lender. See, e.g., State Street Bank & Trust Co. v. Strawser, 908 F.Supp. 249, 252-53 (M.D.Pa. 1995). The debtor purchased a home and

---

[6] For the reasons set forth above, the claim for "equity relief" in the form of rescission or modification is barred under the Rooker-Feldman doctrine and the doctrine of res judicata.
#2878272 (148352.026)

borrowed the money to pay for it. To the extent he has a claim against the originating lender, this in no way implicates the assignee, which was not a party to any of the alleged facts underlying the state law claim. Accordingly, to the extent this court sees fit to address the state law claims, there is absolutely nothing to support any claim against MERS and these claims should be dismissed on their merits.

## IX. CONCLUSION

For all the reasons set forth herein, it is respectfully submitted the claims as against MERS should be dismissed with prejudice.

Respectfully submitted,

WILENTZ GOLDMAN & SPITZER, P.A.

Date: April 19, 2007

BY: /s/ Jonathan J. Bart
Jonathan J. Bart, Esquire
Attorney for Defendants,
Mortgage Electronic Registration
Systems, Inc. and
Litton Loan Service, LP a/k/a
Litton Loan Servicing, Inc.

Wilentz Goldman & Spitzer, P.A.
Two Penn Center, Suite 910
Philadelphia, PA  19102
Telephone: 215-569-0000
Facsimile: 215-636-3999
email: jbart@wilentz.com

#2878272 (148352.026)